# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re: PARAQUAT PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Cases**<br><br>*Syngenta Crop Protection, LLC v. Dorsey*, No. 3:23-pq-03204-NJR | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Syngenta Crop Protection, LLC's ("Syngenta") Motion to Compel Compliance with a Third-Party Subpoena (the "Subpoena") issued to Dr. Earl Ray Dorsey (Doc. 1) and Dr. Dorsey's Cross-Motion to Quash the Subpoena (Doc. 13). This matter was transferred to this Court from the United States District Court for the Western District of New York (Larimer, J.) pursuant to Federal Rule of Civil Procedure 45(f) (Doc. 21). Syngenta seeks documents from Dr. Dorsey concerning an article he wrote about its herbicide, paraquat, which is the subject of multidistrict litigation pending in this Court. Syngenta and Dr. Dorsey are at an impasse regarding Request Nos. 1, 2, and 3 of the Subpoena (the "Disputed Requests") (Doc. 24; Doc. 2-1), which seek the following categories of documents:

1. All Documents relating to or reflecting drafts of, work papers related to, analysis related to, or sources of information in the article *Paraquat, Parkinson's Disease, and Agnotology*, published in Movement Disorders on March 6, 2023.

2. All Documents cited or referred to in the article *Paraquat, Parkinson's Disease, and Agnotology*, published in Movement Disorders on March 6, 2023 or otherwise reviewed in the process of drafting the article.

3.  All Documents related to the submission and peer review process of the article *Paraquat, Parkinson's Disease and Agnotology*, published in Movement Disorders on March 6, 2023. *See* (Doc. 2-1).

The matter is fully briefed and ripe for disposition.

## BACKGROUND

The pending motion arises out of multidistrict litigation in which over 5,000 Plaintiffs allege that their exposure to the herbicide paraquat caused them to develop Parkinson's disease. Syngenta is a named Defendant in the MDL based on its alleged role as a manufacturer of paraquat.

Plaintiffs and Defendants recently filed numerous motions seeking the exclusion of expert testimony in the MDL's four trial selection cases under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). One of the key issues that emerged in expert discovery is whether Plaintiffs' general causation expert, Dr. Martin Wells, stands alone in the scientific community with his opinion that paraquat is capable of causing Parkinson's disease. Defendants have argued that if Dr. Wells is indeed isolated from the broader scientific community, it would support their contention that his opinions are not sufficiently reliable and thus subject to exclusion under Rule 702.

Enter Dr. Earl Ray Dorsey. Dr. Dorsey is a Professor of Neurology at the University of Rochester who has published extensively on issues related to Parkinson's disease (Doc. 13-7). In March 2023, Dr. Dorsey co-authored an article titled "Paraquat, Parkinson's Disease, and Agnotology" in *Movement Disorders*, the official journal of the

International Parkinson and Movement Disorder Society.[1] The article accuses the makers of paraquat of obfuscating the science surrounding their product and engaging in "attacks on science, attacks on scientists, and attacks on the health of the public." The article then asserts that Parkinson's researchers "know what one cause of Parkinson's disease is—paraquat." These contentions garnered significant interest from the parties in the MDL because they tend to refute Defendants' claim that Dr. Wells is the only member of the scientific community to causally link paraquat to the development of Parkinson's disease.

Syngenta sent subpoenas to Dr. Dorsey and his co-author, Dr. Amit Ray, seeking the production of documents related to the article, including prior drafts, the authors' communications with third parties, and documents related to the peer-review process. Dr. Ray produced three prior drafts of the article and a list of sources "cited or referred to" in the article (Doc. 3). Dr. Dorsey, for his part, submitted formal responses and objections to the subpoena. Shortly thereafter, counsel for Dr. Dorsey and Syngenta held an initial conferral, which was unsuccessful (Doc. 13-6).

Syngenta filed its Motion to Compel in the United States District Court for the Western District of New York on August 14, 2023. *See* FED R. CIV. P. 45(d)(2)(B)(i). Dr. Dorsey filed an Opposition and Cross-Motion to Quash the Subpoena on August 30, 2023, to which Syngenta responded a few weeks later. Dr. Dorsey then filed a further reply. The Western District of New York (Larimer, J.) held a hearing on September 25, 2023, and

---

[1] E. Ray Dorsey & Amit Ray, *Paraquat, Parkinson's Disease, and Agnotology*, MOVEMENT DISORDERS, Mar. 6, 2023, https://movementdisorders.onlinelibrary.wiley.com/doi/10.1002/mds.29371.

transferred the matter to this Court on the same day.

This Court's first order of business was to require both sides to hold another conferral in good faith because it appeared, from the briefing, as though they had failed to do so before seeking judicial intervention (Doc. 23). After their second conferral, they were able to resolve "certain issues" and "agree[] on a path forward regarding numerous requests" (Doc. 24). Specifically, Dr. Dorsey agreed to produce documents responsive to Request Nos. 5, 6, and 7 (communications with various third parties) and provide information responsive to Request No. 10 (financial arrangements regarding paraquat). Although progress was made, the parties have reached an impasse regarding the Disputed Requests.[2] This Order resolves the impasse.

## LEGAL STANDARD

In federal court, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED R. CIV. P. 26(b)(1). Although this grant of discovery is broad, it is not unlimited. The scope of discovery is sensitive to the particularities of each case and courts must consider several factors in policing the boundaries of discovery, including whether the burden of the proposed discovery outweighs its anticipated benefit. *Id*. Indeed, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." FED. R. CIV. P. 26(b)(1)

---

[2] The parties agreed to "defer discussions" regarding Request No. 4 (all documents and communications related to the article), Request No. 8 (Dr. Dorsey's previously authored literature regarding paraquat), and Request No. 9 (documents concerning "any association" between paraquat and Parkinson's disease) (Doc. 24).

advisory committee's note to 2015 amendment.

To obtain discovery from third parties with no direct involvement in a case, parties may utilize discovery subpoenas pursuant to Federal Rule of Civil Procedure 45. Although the scope of discovery under Rule 45 is no different than that of Rule 26, courts exercise closer scrutiny over such discovery requests because third parties are not expected to bear the burdens of a litigation in which they have no personal stake. *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *see also America's Health & Resources, Ctr., Ltd. v. Alcon Laboratories, Inc.*, No. 16 CV 4539, 2018 WL 11189390, at *1 (N.D. Ill. Mar. 12, 2018) ("[T]he court has an independent obligation to protect third-party subpoena respondents from undue burden and expense when responding to discovery subpoenas"). Courts therefore, on timely motion, *must* quash or modify subpoenas that "subject[] a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv). To determine whether a subpoena imposes an undue burden, courts consider the recipient's status as a non-party, the relevance of the requested discovery, the requesting party's need for the discovery, and the breadth and concomitant burden of the subpoena. *Parker*, 291 F.R.D. at 188.

## DISCUSSION

Dr. Dorsey's status as a non-party to the MDL is entitled to "special weight." *Id*. Indeed, Dr. Dorsey *declined* an invitation to serve as an expert in the MDL, which means he is not expected to bear the burdens of litigation in the same way a party or retained expert would (Doc. 13-7). Dr. Dorsey's sole connection to the MDL is his article that captivated the parties' attention because of its claim that paraquat is a cause of

Parkinson's disease. But neither Dr. Dorsey's occupation as a professor of neurology nor his publications on Parkinson's disease alter his status as a non-party. *See Signal Financial Holdings LLC v. Looking Glass Financial LLC*, No. 17 C 8816, 2021 WL 4935162, at *1 (N.D. Ill. June 10, 2021) ("Third parties asked to produce documents in litigation are given greater protection from burden or expense than parties are"). This factor thus weighs against the compelled production of documents listed in the Disputed Requests.

The Court also considers the burden of compliance with these Requests to be significant in light of the potential chilling effect that such disclosures could have on Dr. Dorsey himself and the scientific community overall. *See Plough, Inc. v. National Academy of Sciences*, 530 A.2d 1152, 1157 (D.C. 1987). Again, the Disputed Requests seek the production of Dr. Dorsey's drafts and work papers related to the article (Request No. 1), his cited sources and documents he "otherwise reviewed" in drafting the article (Request No. 2), and documents related to the peer-review process (Request No. 3). These are precisely the types of documents that researchers and scientific journals ordinarily keep confidential to ensure the integrity of the peer-review process. *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, No. 08 C 402, 2008 WL 4345158, at *3 (N.D. Ill. Mar. 14, 2008). Dr. Dorsey correctly notes that a non-party researcher's burden of compliance with a discovery subpoena is not limited to the administrative or financial cost of production. The potential chilling effect of compelling the disclosure of a researcher's non-public work product and peer-review documents is relevant to the burden analysis as well.

A decision from the Northern District of Illinois in *Bextra* is instructive on this

point. *Id.* at *1-3. In *Bextra*, Pfizer, Inc. was embroiled in multidistrict litigation and subpoenaed documents from two scientific journals, which were not involved in the underlying litigation. *Id.* at *1. Pfizer sought similar classes of documents from the journals as Syngenta seeks here, including manuscripts of articles submitted for publication, documents concerning the journals' publication decisions, and documents concerning the peer-review process. *Id.* The court denied Pfizer's motion to compel because subpoena compliance "would require the [j]ournals to produce documents and information that has [sic] historically, deliberately and necessarily been kept confidential." *Id.* at *3. This, the court held, created a substantial burden that outweighed any probative value that the documents might have had to Pfizer.[3] *Id.*

The Court finds *Bextra*'s reasoning persuasive. The Disputed Requests seek the production of prior drafts of Dr. Dorsey's article, documents cited in or reviewed for the article, and documents related to the peer-review process. Syngenta effectively seeks permission to examine Dr. Dorsey's internal deliberative process even though he is neither a party nor an expert in the MDL. Requiring Dr. Dorsey to submit to this type of invasive inquiry solely because he authored an opinion article that attracted the attention of the parties in the MDL would undoubtedly create a substantial burden. As the District of Massachusetts noted in its own *Bextra* discovery dispute, "[t]he batch or wholesale disclosure by the [journal] of the peer reviewer comments communicated to authors will

---

[3] Two weeks after the Northern District of Illinois decided *Bextra*, the District of Massachusetts followed suit in denying a motion to compel compliance with a "virtually identical" subpoena that was issued to the New England Journal of Medicine in connection with the same multidistrict litigation. *See In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, 249 F.R.D. 8, 14 (D. Mass. 2008).

be harmful to the [journal]'s ability to fulfill both its journalistic and scholarly missions, and by extension harmful to the medical and scientific communities, and to the public interest." *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, 249 F.R.D. 8, 14 (D. Mass. 2008). Consistent with this sentiment and the line of cases cited in Dr. Dorsey's briefing, the Court considers the burden of compliance to be significant. *Plough*, 530 A.2d at 1160.

The Court is also skeptical of the relevance of documents responsive to the Disputed Requests. In Syngenta's own words, it "believes that lawyers representing plaintiffs [in the MDL] have been involved with, and perhaps even encouraged, Dr. Dorsey to write [the article] so that *plaintiffs* can cite it in the [MDL]" (Doc. 1-1) (emphasis in original). The Court agrees that Syngenta has a reasonable basis to explore whether counsel for the MDL plaintiffs, their experts, or other third parties may have influenced the contents of the article for the benefit of one side in the MDL. For that reason, it is appropriate that Dr. Dorsey agreed to produce his communications with the third parties listed in Request Nos. 5, 6, and 7.[4] These are the documents most likely to capture evidence of bias. But Syngenta has not explained how Dr. Dorsey's—or his peer-reviewers'—scientific work product would reveal evidence of bias. This omission is perhaps not surprising because such documents would be expected to address the

---

[4] Dr. Dorsey's declaration, for instance, states that, one month before the article was published, he emailed a draft of it to Dr. Anthony Lang, one of Plaintiffs' retained experts in the MDL (Doc. 13-7). Such documents are discoverable here, and the Court appreciates Syngenta's and Dr. Dorsey's good faith negotiations to reach agreement on this point.

Page 8 of 10

scientific merit of Dr. Dorsey's article, not the MDL.[5] *See In re Bextra*, 2008 WL 4345158, at *2 (similar documents from non-party scientific journals not relevant in products liability action).

Finally, Syngenta argues that the documents mentioned in the Disputed Requests are necessary because they could expose the article as an advocacy piece that was not the product of a "genuine scientific endeavor" (Doc. 18). Syngenta apparently hopes to gather evidence to suggest that the article lacks scientific rigor and therefore cannot rebut its argument that no scientific analysis has ever causally linked paraquat to Parkinson's disease. On this point, the Court agrees that the documents Syngenta seeks have *some* probative value. But any probative value is easily outweighed by the compelling countervailing interests at stake and Syngenta's ability to refute the article's findings through its own experts. Dr. Dorsey may have discussed the basis of his assertion that paraquat is causally related to Parkinson's disease with his peer reviewers, but that is the very issue that Defendants' and Plaintiffs' experts in the MDL were hired to address. Indeed, both sides in the MDL have retained highly credentialed experts to examine the purported causal connection between paraquat and Parkinson's disease. Syngenta's experts are perfectly capable and will have every opportunity to explain why they consider the article to be scientifically unsound when they testify. But analyzing Dr. Dorsey's drafts, his reliance documents, and his peer-reviewers' comments to critique the

---

[5] Dr. Dorsey's co-author, Dr. Amit Ray, previously produced three unpublished drafts of the article in response to an identical subpoena he received. Syngenta's insistence that Dr. Dorsey produce additional drafts in his possession assumes that additional drafts even exist. Neither Syngenta nor Dr. Dorsey has offered any indication to suggest that to be the case. Therefore, any order compelling Dr. Dorsey to produce drafts of the article would be at least partially duplicative of documents that Syngenta already has.

scientific rigor of his article would likely devolve into a collateral inquiry over what does and does not constitute a genuine scientific analysis. The documents Syngenta seeks are at best marginally necessary to inform the scientific debate in this MDL, which is already keeping over a dozen experts busy.

On balance, the Court is satisfied that the burdens of compliance with the Disputed Requests outweigh the minimal probative value that such discovery would have to Syngenta.

## CONCLUSION

For these reasons, Syngenta's Motion to Compel the Production of Documents (Doc. 1) is **DENIED**, insofar as the motion seeks documents responsive to the Disputed Requests in the Subpoena. Dr. Dorsey's Cross-Motion to Quash the Subpoena (Doc. 13) is **GRANTED**, insofar as it concerns the Disputed Requests.

**IT IS SO ORDERED.**

DATED:   December 4, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**